**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**AT NASHVILLE**

| | | |
|---|---|---|
| **BLUSKY RESTORATION** | ) | |
| **CONTRACTORS, LLC** | ) | **Case No. 3:23-cv-01084** |
| | ) | **Judge Trauger** |
| **v.** | ) | **Magistrate Judge Holmes** |
| | ) | |
| **BRMO, LLC** | ) | |

**To: The Honorable Aleta A. Trauger, United States District Judge**

<u>**REPORT & RECOMMENDATION**</u>

Pending before the Court is the Plaintiff Blusky Restoration Contractors, LLC's "Motion for Entry of Judgment for Damages Pursuant to F.R.C.P. 55(b)(2)" (Docket No. 26), to which Defendant BRMO, LLC has failed to respond. This motion was referred to the undersigned Magistrate Judge "for the preparation of a report and recommendation as to an award of damages in this case." (Docket No. 27.) Plaintiff then filed a memorandum in support of its motion (Docket No. 35) in compliance with the Court's order. For the reasons stated below, the undersigned finds that this matter can be resolved without hearing and respectfully recommends that Plaintiff's motion for default judgment (Docket No. 26) be **GRANTED IN PART**.

## I.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff, a general contracting company, filed its complaint against Defendant, BRMO, LLC, a subcontractor, on October 18, 2023. (Docket No. 1.) Plaintiff alleges that the two entered into three separate contracts wherein Defendant, a subcontractor, would perform "certain exterior and interior capital improvements (removal and replacement/remodel)" of apartments located in Davidson County, Tennessee. (*Id.* at ¶ 8.) Plaintiff refers to these three contracts as "Exterior Subcontract," "Interior Subcontract," and "Upgrades Subcontract." (Docket Nos. 1-1, 1-2, 1-3.)

Plaintiff asserts, however, that Defendant failed to perform or complete the contracted services; sub-subcontracted some of those services without permission or authority; and failed to properly hire, train, manage, or supervise its employees. (Docket No. 1 at ¶¶ 10–17.) Plaintiff alleges that it paid Defendant for services that were not properly performed or completed, and that it was forced to hire additional subcontractors to complete the work. (*Id.* at ¶¶ 18–19.) Accordingly, Plaintiff initiated this lawsuit and asserted the following claims against Defendant: (1) breach of subcontracts; (2) indemnity; (3) negligence; (4) contribution; and (5) unjust enrichment or monies had and received. (*Id.* at ¶¶ 20–59.)

On January 23, 2024, Plaintiff filed a motion for entry of default as to Defendant (Docket No. 11), which the Clerk of Court granted on April 1, 2024 (Docket No. 14). Four months later, on August 9, 2024, Plaintiff filed a one page "Motion for Entry of Judgment for Damages," which was accompanied by two affidavits. (Docket Nos. 20, 20-1 to 20-2.) Plaintiff did not specify whether the motion was filed pursuant to Rule 55(b)(1) of the Federal Rules of Civil Procedure, which allows the Clerk of Court to enter a default judgment if the claim is for a sum certain, or pursuant to Rule 55(b)(2), which allows the Court to enter a judgment in all other cases.[1] However, on September 13, 2024, the Clerk of Court entered an order denying the motion without prejudice. (Docket No. 21.) In the order, the Clerk of Court explained that she construed the motion as one made pursuant to Rule 55(b)(1) but was required to deny the motion because Plaintiff requested attorney's fees, which are not sum certain damages, and because the information submitted in support of the motion was insufficient to enable the Clerk to determine whether Plaintiff's damages were for a sum certain.

---

[1] Unless otherwise noted, all references to rules are to the Federal Rules of Civil Procedure.

On December 19, 2024, Plaintiff filed a "Supplemental Motion for Entry of Judgment for Damages," which was accompanied by thirty exhibits. (Docket Nos. 22, 22-1 to 22-30.) Once again, Plaintiff did not specify whether the motion was filed pursuant to Rule 55(b)(1) or 55(b)(2). Accordingly, on April 23, 2025, the Clerk of Court entered another order construing the motion as being made under Rule 55(b)(1) and denied it without prejudice for the same reasons, namely that the motion was not one for sum-certain damages. (Docket No. 24.)

In the instant motion, Plaintiff seeks "a money judgment against Defendant in the amount of $760,200.00, plus pre- and postjudgment interest" under Rule 55(b)(2). (Docket No. 26.) Plaintiff did not originally file a memorandum in support of its motion or provide the Court with any substantive argument as to why a default judgment should be entered in its favor and against Defendant. Instead, Plaintiff asked the Court to schedule a hearing "so that it may present witness testimony on the issue of damages and interest." (*Id.* at 2.) Accordingly, the Court ordered Plaintiff to file a supplemental memorandum in support of its motion that would provide the Court with detail about: (1) how Plaintiff has calculated its requested damages figure of $760,200.00, as well as its request for "pre- and postjudgment interest," and (2) under which legal claim or claims Plaintiff believes it may recover its requested damages figure.

Plaintiff filed its supplemental memorandum, but now requests a different and higher amount of damages totaling $1,358,719.71 as well as prejudgment interest at a rate of 10%. (Docket No. 35.) In other words, Plaintiff no longer requests postjudgment interest and does not make any request related to attorney's fees and costs. Plaintiff filed four exhibits to its memorandum, which include an affidavit from Robby Webb dated August 6, 2024 and its three contracts with BMO. (Docket Nos. 35-1, 35-2, 35-3, 35-4.) Along with its memorandum, Plaintiff

filed a more recent affidavit from Robby Webb dated October 26, 2025 and two supporting exhibits. (Docket Nos. 34, 34-1, 34-2.)

<h2 style="text-align:center">II.    LEGAL STANDARDS AND ANALYSIS</h2>

## A.    Default Judgment

As the Court set forth in its prior order, due to Defendant's default, the Court is entitled to accept as true the well-pleaded factual allegations of the complaint. (Docket No. 28 at 3 (citing *I Love Juice Bar Franchising, LLC v. ILJB Charlotte Juice, LLC*, No. 3:19-cv-00981, 2020 WL 4735031, at *3 (M.D. Tenn. Aug. 14, 2020); *Vesligaj v. Peterson*, 331 F. App'x 351, 355 (6th Cir. 2009)). However, default is not considered an admission of damages. *Vesligaj*, 331 F. App'x at 355 ("Where damages are unliquidated a default admits only [the defaulting party's] liability and the amount of damages must be proved.").

To determine damages, the trial court can, but is not required to, hold an evidentiary hearing. "[A] hearing is not necessarily required if the moving party submits uncontested, sworn affidavits sufficient to establish the amount of damages." *Broad. Music, Inc. v. Marler*, No. 1:09-cv-193, 2009 WL 3785878, at *5 (E.D. Tenn. Nov. 12, 2009). *See also* Fed. R. Civ. P. 55(b)(2)(A) (district court "may conduct hearings . . . when, to enter or effectuate judgment, it needs to: (A) conduct an accounting; (B) determine the amount of damages; (C) establish the truth of any allegation by evidence; or (D) investigate any other matter"); *Vesligaj*, 331 F. App'x at 354.

In its supporting memorandum, Plaintiff seeks a default judgment against Defendant; monetary damages in the amount of $1,358,719.71; and prejudgment interest at a rate of 10%. (Docket No. 35.) Plaintiff no longer seeks postjudgment interest or attorney's fees and expenses. Because the damages in this case – contract damages – are certain and supported by a sworn

4

declaration (Docket No. 34), the Court concludes that an evidentiary hearing is unnecessary. Fed. R. Civ. P. 55(b).

**B.      Defendant's Liability**

In its supporting memorandum, Plaintiff focuses on what it believes it is entitled to recover pursuant to Defendant's alleged breach of subcontracts. Plaintiff does not address any of its other claims against Defendant, including for indemnity, negligence, contribution, or unjust enrichment or monies had and received. Accordingly, the Court will only analyze whether Defendant is liable under a breach of subcontracts theory.

To establish a claim for breach of contract under Tennessee law, a plaintiff must show: (1) the existence of an enforceable contract; (2) non-performance amounting to a breach of that contract; and (3) damages caused by the breach. *C & W Asset Acquisition, LLC v. Oggs*, 230 S.W.3d 671, 676–77 (Tenn. Ct. App. 2007) (citing citation omitted). "To be enforceable under Tennessee law, a contract must result from a meeting of the minds of the parties in mutual assent to the terms, must be based upon a sufficient consideration, free from fraud or undue influence, not against public policy and sufficiently definite to be enforced." *Starnes Family Office, LLC v. McCullar*, 765 F.Supp.2d 1036, 1050 (W.D. Tenn. 2011) (quoting *Doe v. HCA Health Svcs. of Tenn., Inc.*, 46 S.W.3d 191, 196 (Tenn. 2001)) (cleaned up).

Although a contract may be written or oral, it "must be of sufficient explicitness so that a court can perceive what are the respective obligations of the parties." *HCA Health Servs. of Tenn.*, 46 S.W.3d at 196 (quoting *Higgins v. Oil, Chem. & Atomic Workers Int'l Union, Local # 3-677*, 811 S.W.2d 875, 879 (Tenn. 1991)). A contract's terms are "sufficiently definite if they provide a basis for determining whether a breach has occurred and for giving an appropriate remedy." *Jones v. LeMoyne–Owen Coll.*, 308 S.W.3d 894, 904 (Tenn. Ct. App. 2009).

5

To state a valid claim for breach of contract, a plaintiff is not required to identify all the terms of an enforceable agreement, but the complaint must "raise a right to relief above the speculative level." *Bishop v. Lucent Techs., Inc.*, 520 F.3d 516, 519 (6th Cir. 2008) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007)). Direct recitals of the elements are unnecessary if the complaint contains "either direct or inferential allegations respecting all material elements." *Id.*

The Court finds that Plaintiff has sufficiently alleged all elements of a breach of contract claim against Defendant. Plaintiff asserts that it entered into three subcontracts with Defendant; that Defendant failed to perform under those subcontracts; and that Plaintiff suffered damages because of that failure to perform. (Docket No. 1 at ¶¶ 20–35.) For these reasons, the Court finds that Plaintiff is entitled to default judgment with respect to its breach of subcontracts claim.

## C.    Plaintiff's Damages

Plaintiff seeks damages for it breach of subcontracts claim in the total amount of $1,358,719.71, which is comprised of: (1) $990,517.71 that Plaintiff paid to Defendant for the work that is the subject of the subcontracts, and (2) $368,202.00 as "backcharge" that was paid to third parties to complete the work that Defendant failed to complete. (Docket No. 35 at 4.) To support its request for damages, Plaintiff submitted the affidavit of Robby Webb, its Senior National Project Director. (Docket No. 34.) In his affidavit, Mr. Webb references records that reflect what Plaintiff paid to Defendant for its work, and what Plaintiff paid to a third-party to complete Defendant's work. (*Id.* at ¶¶ 8–10, 14–15.)

In its complaint, Plaintiff alleges that Defendant defaulted in its performance of the three subcontracts into which the parties entered by, among other things, hiring or using sub-subcontractors without Plaintiff's authorization and failing to complete the services required under

6

the subcontracts. (*Id.*) Plaintiff points to two provisions in the subcontracts that it contends allow it to recover monetary damages from Defendant for its breaches. First, under the subcontracts, Defendant agreed that, if it assigned or delegated its duties under the contract to another contractor, Defendant would pay to Plaintiff all sums paid by Plaintiff to Defendant pursuant to the subcontracts. (Docket No. 1-1 at 4; Docket No. 1-2 at 4; Docket No. 1-3 at 4.) Second, under the subcontracts, Defendant agreed that, if it failed to cure any delay or defect, Plaintiff could "backcharge" Defendant for costs to remedy those delays or defects, which could include costs for additional workmen, materials, equipment, etc. (Docket No. 1-1 at 4; Docket No. 1-2 at 4; Docket No. 1-3 at 4.)

In his affidavit, Mr. Webb states that Plaintiff paid Defendant $990,517.71 for work done at the subject property. (Docket No. 34 at ¶ 7.) He refers to three summaries showing that Plaintiff paid Defendant a total of $508,723.41 for roof work (Docket No. 34-1 at 1); $274,752.00 for repairs (*id.* at 2); and $207,042.30 for code upgrades (*id.* at 3). Mr. Webb also states that Plaintiff paid other third-party contractors $368.202.00 to complete or repair Defendant's work. (Docket No. 34 at ¶ 13.) He refers to two summaries showing that Plaintiff paid third-party Premier Industrial Solutions $297,500.00 and $70,702.00 to complete or fix Defendant's work. (Docket No. 34-2.)

Based on Mr. Webb's affidavit and the accompanying exhibits, the Court finds that an award of damages of $1,358,719.71 is appropriate, which includes $990,517.71 that Plaintiff paid to Defendant for the work that is the subject of the subcontracts and $368,202.00 as "backcharge."

Separately, Plaintiff asks the Court to award it prejudgment interest at a rate of 10% per annum from October 31, 2021, the latest date on which Defendant breached the subcontracts, to the date on which the Court enters its final order. (Docket No. 35 at 6.) In diversity cases in the

Sixth Circuit, "state law governs awards of prejudgment interest." *Estate of Riddle ex rel. Riddle v. S. Farm Bureau Life Ins. Co.*, 421 F.3d 400, 409 (6th Cir. 2005) (quoting *F.D.I.C. v. First Heights Bank, FSB*, 229 F.3d 528, 542 (6th Cir. 2000)). "Under Tennessee law, pre-judgment interest 'may be awarded . . . in accordance with the principles of equity at any rate not in excess of a maximum effective rate of ten percent (10%) per annum.'" *Kova Bristol Tenn 1894, LLC v. Bristol Preservation, LLC*, No. , 2020 WL 1344313, at *2 (E.D. Tenn. Oct. 5, 2020) (quoting Tenn. Code Ann. § 47-14-123). "An award of prejudgment interest is within the sound discretion of the trial court," but "a court must keep in mind that the purpose of awarding the interest is to fully compensate a plaintiff for the loss of the use of funds to which he or she was legally entitled, not to penalize a defendant for wrongdoing." *Myint v. Allstate Ins. Co.*, 970 S.W.2d 920, 927 (Tenn. 1998) (citations omitted). *See also Am.'s Collectibles Network, Inc. v. Sterling Commerce (Am.), Inc.*, 819 F. App'x 397, 400 (6th Cir. 2020). "Equitable factors relevant to a court's decision include the following: (1) promptness in the commencement of a claim, (2) unreasonable delay of the proceedings by either party, (3) abusive litigation practices by either party, (4) the certainty of the existence of an underlying obligation, (4) the certainty of the amount in dispute, and (5) prior compensation for the lost time value of the plaintiff's money." *Poole v. Union Planters Bank, N.A.*, 337 S.W.3d 771, 791 (Tenn. Ct. App. 2010) (collecting cases).

"Tennessee courts have established the following guiding principles to assist courts in the decision of whether to award pre-judgment interest: (1) whether such an award is fair; (2) whether the 'amount of the obligation is certain, or can be ascertained by a proper accounting'; and (3) whether the amount is 'disputed on reasonable grounds.'" *Kova Bristol Tenn 1894, LLC*, 2020 WL 13443413, at *2 (quoting *Myint*, 970 S.W.2d at 927).

8

Here, each of these three factors weighs in favor of an award of prejudgment interest. The amount owed to Plaintiff under the subcontracts is certain, as is Defendant's obligation to pay those amounts, based on the facts alleged in the Complaint and Mr. Webb's affidavit. However, Plaintiff does not explain why the maximum rate of 10% should apply. Further, Plaintiff alleges that Defendant's last breach occurred on October 31, 2021, but it did not file its complaint until nearly two years later on October 18, 2023.

Nevertheless, based on the totality of the circumstances, including that Defendant did not attempt to assert a defense, the Court finds that Plaintiff should be awarded its requested rate of prejudgment interest of 10%. However, in accordance with the principles of equity, the Court will only calculate prejudgment interest from October 18, 2022 (one year before the date the complaint was filed) to September 13, 2024 (the date of the Court's initial order regarding default judgment) because the Court finds that Plaintiff was delayed in filing its complaint. *See Advanced Workzone Servs., LLC v. R.R. Consultants, PLLC*, No. 3:23-CV-00947, 2024 WL 4652210, at *2 (M.D. Tenn. Nov. 1, 2024). The Court calculates this amount as <u>$259,087.37</u>. To come up with this amount, the Court: (1) took 10% of $1,358,719.71, which is approximately $135,871.97; (2) divided that number by 365 days, which is approximately $372.25; and (3) multiplied that number by 696 (the number of days between October 18, 2022 and September 14, 2024), which is $259,087.37. *See id.*

In its supporting memorandum, Plaintiff does not seek an award of any other form of damages, including postjudgment interest or attorney's fees and costs. Accordingly, the Court will not award any other amounts of damages to Plaintiff.

9

### III.    CONCLUSION

Based on the foregoing, it is respectfully **RECOMMENDED** that:

1.      Plaintiff's unopposed "Motion for Entry of Judgment for Damages Pursuant to F.R.C.P. 55(b)(2)" (Docket No. 26) be **GRANTED IN PART**.

2.      Judgment be entered against Defendant in favor of Plaintiff for:

   a.      compensatory damages in the amount of $1,358,719.71; and

   b.      prejudgment interest from October 18, 2022 to September 14, 2024 in the amount of $259,087.37.

3.      A final judgment be entered in this action in accordance with Federal Rule of Civil Procedure 58.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of this Report and Recommendation and must state with particularity the specific portions of this Report and Recommendation to which objection is made. *See* Fed. R. of Civ. P. 72(b)(2), Local R. 72.02(b). Failure to file written objections within the specified time can be deemed a waiver of the right to appeal the District Court's Order regarding the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Any response to the objections must be filed within fourteen (14) days after service of objections. *See* Fed. R. Civ. P. 72(b)(2), Local R. 72.02(b).

Respectfully submitted,

Signed By:

**_J. Gregory Wehrman_**

**United States Magistrate Judge**